THE HONORABLE KAREN A. OVERSTREET
Chapter 7
Place: Marysville Municipal Court
1015 State Avenue, Courtroom 1
Marysville, WA 98270
Hearing Date: June 12, 2013
Time: 10:30 a.m.
Response Date: June 5, 2013

# UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 12-17115 |
| Denise Jean Rodriguez, | ) | |
| | ) | |
| | ) | TRUSTEE'S NOTICE OF |
| | ) | HEARING AND MOTION TO |
| | ) | APPROVE SALE FREE AND |
| | ) | CLEAR OF LIENS, TO PAY |
| | ) | CERTAIN LIEN CLAIMS, |
| | ) | COMMISSIONS, CLOSING |
| | ) | COSTS, ETC. |
| | ) | |
| Debtor(s). | ) | |
| | ) | |

## I. NOTICE

PLEASE TAKE NOTICE that the trustee seeks an order approving the sale of real property as more fully explained below. The matter IS SET FOR HEARING as follows:

| | |
|---|---|
| JUDGE: | Honorable Karen A. Overstreet |
| DATE: | June 12, 2013 |
| TIME: | 10:30 a.m. |
| HEARING PLACE: | Marysville Municipal Court |
| | Courtroom 1 |
| | 1015 State Avenue |
| | Marysville, WA 98270 |
| RESPONSE DATE: | June 5, 2013 |

IF YOU OPPOSE the Motion, you must file your written response with the court clerk at the Bankruptcy Court, United States Courthouse, Room 6301, 700 Stewart Street, Seattle, WA 98101, serve

TRUSTEE'S NOTICE OF HEARING AND MOTION
TO APPROVE SALE FREE AND CLEAR OF LIENS,
TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS,
CLOSING COSTS, ETC. - 1

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA 98110
(206) 842-3638

and deliver copies on the undersigned and the United States Trustee at the United States Courthouse, Room 5103, 700 Stewart Street, Seattle, WA 98101 NOT LATER THAN the RESPONSE DATE, which is June 5, 2013. Failure to comply with the local rule may be deemed by the court as opposition without merit.

IF NO RESPONSE IS TIMELY FILED AND SERVED, the Court may, in its discretion, GRANT THE MOTION *EX PARTE* PRIOR TO THE HEARING, WITHOUT FURTHER NOTICE, and strike the hearing.

## II. MOTION FOR SALE FREE AND CLEAR OF LIENS

The trustee, Michael P. Klein, seeks an order allowing him to sell real property located at 22511 1st Dr. SE, Bothell, WA 98021 (hereinafter "Property") to Terry Lee Laws Jr. and Sarah Jihae Laws for $247,000.00 cash at closing, or such higher sum as may be negotiated to close the sale, pursuant to the terms of the Residential Real Estate Purchase and Sale Agreement with attached addendums and amendments (hereinafter "Purchase and Sale Agreement"). A copy of the Purchase and Sale Agreement is attached as Exhibit A. To the best of the trustee's knowledge Terry Lee Laws Jr. and Sarah Jihae Laws are good faith purchasers of the subject property within the meaning of 11 U.S.C. §363(m). The property is being sold on an "As Is" basis without warranties expressed or implied.

The trustee proposes to sell the property free and clear of all liens, judgments, warrants, encumbrances, including, without limitation, the first deed of trust held by Indymac Bank/Onewest Bank[1] or assigns and second deed of trust held by Sound Credit Union[2] or assigns pursuant to 11 U.S.C. §363(f).

At the time of closing and through escrow, the trustee proposes to pay a sales commission equal to 6% of the sales price, with such amount to be divided RE/MAX PERFORMANCE PLUS and other agent(s) and/or broker who were involved with this sale. The trustee also proposes to pay at closing and escrow any undisputed encumbrances, prior liens, excise taxes that become due as a result of this sale, as well as the estate's share of any outstanding real estate taxes that are due in connection with the property, prorated to the date of closing, the cost of purchasing a title insurance policy and any other

---

[1] The debtor's schedules list the first deed of trust holder as "Indymac Bank/Onewest Bank," but the recorded documents state that the beneficial first deed of trust interest was assigned and is being held by "MERS" solely as a nominee for Mortgage Broker Associations, Inc, its successors and assigns. The beneficial interest was assigned to U.S. Bank National Association, as trustee for The LXS 2007-4N. U.S. Bank National Association, as Trustee for the LXS 2007-4N was granted relief from stay by court order on April 5, 2013 (docket #32).
[2] The debtor's schedules list a second deed of trust holder in favor of Sound Credit Union, but the recorded documents state that the second deed of trust is held by "Watermark Credit Union."

TRUSTEE'S NOTICE OF HEARING AND MOTION
TO APPROVE SALE FREE AND CLEAR OF LIENS,
TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS,
CLOSING COSTS, ETC.     - 2

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA  98110
(206) 842-3638

customary closing costs that are necessary to carry out and complete a sale of the aforementioned property. In many cases the existence of a utility liens or property tax liens is unknown until closing. These liens are usually, but not always, equal to the amounts incurred over several months. The trustee will pay these liens from the sale proceeds.

To the extent there is not sufficient funds to pay the first deed of trust holder, Indymac Bank/Onewest Bank and/or assigns, this will be a short sale and, therefore, will be subject to the approval of Indymac Bank/Onewest Bank or assigns. It does not appear that the second deed of trust holder, Sound Credit Union, will receive any funds, unless the first deed of trust holder allows the other lien holder(s) to receive funds. The buyer agrees to pay the estate a buyer's premium of 5.5% of purchase price or $20,000, whichever is greater, free and clear of any liens. The trustee will negotiate with Indymac Bank/Onewest Bank or assigns; however, the ultimate terms required by Indymac Bank/Onewest Bank or assigns are unknown at this time. Further, should the buyer be unable to close, or should the trustee receive an offer he determines is more favorable to the estate, the trustee reserves the right to, rather than treating the funds to the estate as a buyer's premium, negotiate a carve out under Section 506(c) of the Bankruptcy Code with the secured creditor. Further, as the final terms of the agreement are unknown, the trustee is requesting authority to use a portion of the buyer's premium to facilitate the sale. That may include increasing the amount received by the secured creditor, paying a portion of the buyer's closing costs or refunding a portion of the funds to the buyer.

The trustee will hold the remaining proceeds in a trustee estate account for the bankruptcy estate, pending further order of this court.

### III. CONCLUSION

Wherefore, the trustee seeks an order approving the above-described proposal pursuant to 28 U.S.C. §157(b)(2)(A), (M), (N) and (O), to 11 U.S.C. §§363, 522, 541, and to Bankruptcy Rule 2002 and 6004(h).

DATED this __6th___ day of May, 2013.

    ___/s/ Michael P. Klein_____
    Michael P. Klein, Chapter 7 Trustee

TRUSTEE'S NOTICE OF HEARING AND MOTION
TO APPROVE SALE FREE AND CLEAR OF LIENS,
TO PAY CERTAIN LIEN CLAIMS, COMMISSIONS,
CLOSING COSTS, ETC.    - 3

MICHAEL P. KLEIN
Chapter 7 Trustee
755 Winslow Way E., Suite 201
Bainbridge Island, WA 98110
(206) 842-3638

DocuSign Envelope ID: B6562850-E36B-4FA1-AF43-9F0CB9AF4995
Authentisign ID: F5B49319-9AF2-4B93-8512-5783FA6CCF85

# Alise Roberts & Company

## RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT

## U.S. BANKRUPTCY COURT, WESTERN DIST. OF WASHINGTON AT SEATTLE

Page | 1

THIS AGREEMENT is entered into by and between the below named Buyer and the below named Seller, in his or her capacity as a United States Bankruptcy Trustee for the below named bankruptcy estate. The Buyer agrees to purchase and the Seller agrees to sell the described property pursuant to the following terms and conditions:

BUYER(S): Terry Lee Law Jr and Sarah Jhae Laws

ADDRESS: _____

PHONE: _____

EMAIL: srhun86@gmail.com

SELLER: Michael P. Klein- Chapter 7 Bankruptcy Trustee for Denise Rodriguez 12-19937

PROPERTY STREET ADDRESS: 22511 1st Dr. SE, Bothell WA 98021

LEGAL DESCRIPTION: Attached on Exhibit "A" hereto

PURCHASE PRICE: ~~$230,000~~ $247,000  MPK, Chapter 7 Trustee  [TL] [SL]

DATE OF CLOSING: Within 21 days of Bankruptcy Court or lender approval, whichever is later

SELLING FIRM: Keller Williams Realty  MLS OFFICE NO. 317

SELLING FIRM ADDRESS: 1304 N 45th St, Seattle

SELLING BROKER: Jennifer Daniels  MLS LAG 92719

PHONE AND FAX: 253-686-1036 / 206-494-0296

EMAIL: jen@urbanabodegroup.com

LISTING FIRM: RE/Max Performance Plus

24401 104th Avenue SE #201 Kent, WA 98030

206-914-4940 (main line) 206-299-3131

team@aliseroberts.com

EARNEST MONEY AMOUNT: $3000  FORM  CASH___ PERSONAL CHECK___ CASHIERS CHECK X___

Seller Initial MPK, Chapter 7 Trustee     Buyer Initial [TL]  Buyer Initial [SL]

Exhibit A

# Alise Roberts & Company

Page | 2

1. **No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "as is, where is" and without any representations or warranties of any kind express or implied.

2. **Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the Buyer shall be forfeited to the Seller as the sole and exclusive remedy available to the Seller for such failure. If the earnest money deposit is greater than five percent of the purchase price, only that portion of the earnest money deposit equal to five percent of the purchase price shall be forfeited to the Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture of the earnest money and understand and agree to it.

Seller Initials __MPK, Chapter 7 Trustee__ Buyer Initials __TL__ Buyer Initials __SL__

3. **Financing.** This offer [X] is [ ] is not conditioned upon Buyer obtaining a [X] conventional [ ] FHA [ ] VA [ ] USDA [ ] FHA 203k.

4. **Down Payment/Loan Application.** Buyer agrees to pay __3__ down, and to make an application, in good faith, within seven days after initial signing of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within 7 (seven) days of initial signing, Seller may retain the earnest money and this Agreement shall terminate.

5. **PROOF OF FUNDS** In the event buyer fails to provide proof of all necessary funds to close; including down payment, closing costs and bankruptcy fee within 48 hours of Sellers acceptance of offer, then this agreement may be terminated by notice from the seller to the buyer and earnest money shall be returned to the buyer.

6. **Financing Deadline/Seller Termination Notice.** If Buyer has not within 30 days after initial signing of this Agreement, given notice that Buyer has obtained financing or waived the financing condition, then this Agreement shall terminate upon the expiration of the 30th day after initial signing. If termination occurs, Seller shall remit the earnest money to the Buyer.

7. **Loan Costs.** Seller will not be responsible for any loan costs, unless agreed to upon mutual acceptance, except (1) such portion of Buyer's costs that Buyer is prohibited from paying pursuant to applicable FHA regulations; and (2) if this sale is financed by a VA loan, the Seller agrees to pay those closing costs Buyer is prohibited from paying pursuant to applicable VA regulations.

8. **Inspections.** The Buyer has fifteen (15) days from the date of initial signing to inspect the premises. Unless the Buyer provides Seller with notice within said fifteen (15) days that

Seller Initial __MPK, Chapter 7 Trustee__ Buyer Initial __TL__ Buyer Initial __SL__

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4893-6312-57831A0C0F85

# Alise Roberts & Company

Page | 3

inspection contingency has been waived, this agreement will be terminated by the seller and earnest money shall be refunded to the buyer. __TL__ (buyer) __SL__ (buyer
Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyers inspection or testing of the property.

9. **Defects.** Buyer represents to the Seller that Buyer will fully inspect the property and Buyer assumes the responsibility and risks of all defects and conditions, including such defects and conditions, if any, that cannot be observed by casual inspection. Seller makes no representation or warranties expressed or implied of any kind with respect to, among other things; (a) the dimension, size or acreage of the premises; (b) any applicable governmental laws or regulations; (c) availability of water, sewer or other utilities: (d) the environmental condition of the property; or (e) the existence or non-existence of urea-formaldehyde or asbestos.

10. **Personal Property.** The Seller is a bankruptcy trustee and has no knowledge of whether or not there is any leased personal property on the premises. It shall be up to the Buyer to make an appropriate investigation to determine whether or not there is any leased property on the premises which in any case is not included in the sale. The debtor(s) may claim personal property on the premises, such as non-built-in appliances, drapes, curtains, etc., as exempt property. In such instance that personal property is not included in the sale. The following items have been identified by the debtor as personal property and will be removed from the home prior to closing:

_____
_____
_____

_____(buyer)_____(buyer

11. **Feasibility Study.** If the Purchase and Sale Agreement is subject to a feasibility study and the sale does not close because of any contingency which the Buyer does not waive, then prior to returning any earnest money or promissory note the Buyer shall provide the Seller with a copy of every study, report, analysis or appraisal regarding the property.

12. **SHORT SALE DISCLOSURE** This sale is _X_/in not___ a short sale. If this is a short sale the following shall apply:
    a. This agreement is contingent upon the seller obtaining written consent from the lienholder(s) within 60 days of mutual acceptance. Seller shall notify buyer of lienholder approval by providing buyer a copy of the lienholder approval letter. If seller fails to reach agreement with lienholder, this agreement shall terminate and earnest money will be refunded to the buyer.

Seller Initial  MPk, Chapter 7 Trustee    Buyer Initial __TL__  Buyer Initial __SL__

## Alise Roberts & Company

Page | 4

b. Buyer acknowledges that lienholder may have additional addendums and clauses that will be integrated into this agreement. Buyer agrees to return all lienholder required documents within 2 calendar days of receipt. If buyer fails to return required documents, this transaction may be cancelled by the seller and earnest money shall be returned to the buyer. __TL__ (buyer) __SL__ (buyer)

c. Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA liens, utility liens and appraisal required repairs may not be agreed to by lienholder. Buyer agrees to pay for all costs agreed to by lienholder. The following amounts will be requested from the lienholder on this property:
   i. Sewer cap fee_____
   ii. Septic pumping and inspection_____
   iii. Well cert and inspection _____
   iv. HOA Lien_____
   v. Utility lien_____
   vi. Appraisal required repairs_____
   vii. Other_____

d. Buyer Does __X__ /Does Not _____ request that seller pay up to __3%__ in closing and other allowable costs.

13. **Hazardous Waste.** The Seller, as a bankruptcy trustee, has no actual personal knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products and asbestos, and has no actual personal knowledge of the violation of any environmental law, regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property of other parties including the trustee's real estate agent, debtor, the debtor's employees and agents, or any other persons or entitles shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related to the presence of hazardous waste and the environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste and environmental condition.

14. **Possession.** Buyer shall be entitled to possession upon closing.

15. **Closing.** "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. Seller does not agree to clean the interiors or exteriors of any structures. The sale is "as is, where is."

16. **Escrow Agent.** The transaction shall be escrowed by **First American Escrow-Tammi Habic**, 3224 Wetmore Avenue, Everett, WA 98201, phone (425)551-2022 and fax (866)859-0436, or such other escrow the Seller may designate.

17. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area,

Seller Initial __MPK, Chapter 7 Trustee__     Buyer Initial __TL__ Buyer Initial __SL__

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4893-6312-5789TA0C0F05

# Alise Roberts & Company

Page | 5

including but not limited to zoning; easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property; and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

18. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Sellers choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement if available at no additional cost. If buyer elects to purchase a homeowner or extended title policy, the difference in premium shall be a buyer expense. The preliminary commitment therefor, and the policy to be issued, shall contain no exceptions other than general exclusions and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in paragraph 22 hereof, and this Agreement shall thereupon be terminated

19. **Title Transfer.** Title shall be transferred by the bankruptcy trustee's quit claim deed.

20. **Buyer's Funds to Close.** Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

21. **Closing Costs and Pro-Rations.** Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank.

22. **Sale Information.** After approval by the United States Bankruptcy Court, selling agent is authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the listing and/or selling agents, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report.

23. **Notices.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by selling agent who, for this limited purpose,

Seller Initial  MPK, Chapter 7 Trustee    Buyer Initial  TL  Buyer Initial SL

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4893-6312-57897A06C0F05

## Alise Roberts & Company

Page | 6

shall be the agent of both parties. Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the selling agent, unless that is a Saturday, Sunday or holiday, in which event it will commence on the next following business day. Buyer must keep selling agent advised of their whereabouts to receive prompt notification of receipt of a notice. Selling agent has no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement.

24. **Earnest Money Receipt and Disbursement**. Selling agent acknowledges receipt from Buyer of the earnest money as set forth above in the form indicated to be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws). Agent shall not deposit any check until Buyer and Seller both have completed initial signing of this Agreement. Any unpaid loan or sale costs incurred for the Buyer, including credit report, appraisal fee, and escrow cancellation fee, may be paid from the earnest money prior to its disbursement.

25. **Seller Conditions**. This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) the trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax consequences and (2) if the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C. Section 506(c) if there are liens against the property.

26. **Subsequent Offers**. All purchase agreements are subject to approval and order of the U. S. Bankruptcy Court, and there cannot be mutual acceptance until final approval by the Bankruptcy Court. The Seller will apply to the Bankruptcy Court for approval of the sale as set forth herein as soon as reasonably practicable. The Bankruptcy Court hearing generally takes place within four to six weeks of initial signing. Mutual acceptance occurs upon final approval by the Bankruptcy Court. Further, if the trustee receives a better offer on the property prior to or at the Bankruptcy Court hearing, the trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from this Agreement will not change the law. The trustee agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match an opportunity competing offer.

27. **Competing Bids**. If this agreement is the first agreement the Seller has signed regarding the subject property, the Seller, subject to court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. In order to bring this paragraph into effect, Buyer must notify the Seller of its intent to match the third party's offer within 48 hours of receipt from the Seller of written notice of the third party's offer. The Seller's notice shall be in writing and state that the Buyer needs to meet or exceed the third party's price and other


Seller Initial MPK, Chapter 7 Trustee


Buyer Initial TL  Buyer Initial SL

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4893-6312-5783FA0C0F05

## Alise Roberts & Company

terms. Price increases must be in increments of not less than one percent of the original offer. If an offer is received within 24 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest, and best offers at or following the hearing to approve the sale.

Page | 7

28. **Agreement To Purchase And Time Limit For Acceptance**. Buyer offers to purchase the property on the above terms and conditions. Seller has until the close of business on the date set forth below initially to sign this offer. The initial signing is not effective until a signed copy hereof is actually received by the office of the selling agent. If this offer is not so signed, it shall lapse and selling agent shall refund the earnest money to Buyer.

29. **Counteroffers.** If a party makes a counteroffer the other party shall have until 9:00 p.m. on the second day following receipt of the counteroffer to sign it. Signing is only effective by delivering the signed counteroffer to the office of the selling broker.

30. **Commission**. A real estate commission will be paid at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court.

31. **Resale Certificate**. If the subject real property is a condominium, Seller agrees to deliver a Resale Certificate to Buyer within ten (10) days after written lien holder approval has been obtained. Buyer shall be conclusively deemed to have approved said Resale Certificate unless within five (5) days following receipt thereof, Buyer gives notice of disapproval of the same. If Buyer disapproves said Resale Certificate, this Agreement shall terminate and the earnest money shall be refunded to Buyer.

32. **Disclosure Statement**. The Seller is a bankruptcy trustee and therefore exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

33. **Earnest Money Deposit** Selling Broker will deposit any check to be held by Selling Broker as earnest money within three (3) days after receipt or initial signing, whichever occurs later. If the earnest money is held by Selling Broker and is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000.00 or less, the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent. Buyer agrees to pay financing and purchase costs incurred by buyer. If all or part of the earnest money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom.

Seller Initial  MPK, Chapter 7 Trustee     Buyer Initial  TL   Buyer Initial  SL

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4B93-6312-57831A6C0F05

# Alise Roberts & Company

34. **Lead Paint.** Many used homes, especially those constructed before 1978, contain lead paint. Lead paint is poisonous, especially for children. The Seller has no knowledge with respect to the presence or absence of lead paint in the subject property. The Buyer shall undertake such investigation as he or she deems prudent in the circumstances. The Buyer shall conduct an initial inspection for the presence of lead paint within the seven day time frame set forth in paragraph 7 herein. However, provided that the Buyer obtains specimens for analysis within the original inspection period and delivers them to a laboratory, upon written notice to the Seller within the original seven (7) day period, the Buyer may have an additional ten (10) days to obtain the results of a laboratory analysis for the presence of lead. If the Buyer does not obtain such laboratory samples, deliver them to a laboratory and provide the Seller with notice within seven (7) days of initial signing, this contingency will be deemed to be waived on the close of business seven days from Initial signing. Unless the Buyer notifies the Seller within such additional ten (10) days period that the property is not acceptable due to the presence of an unsafe levels of lead paint, then this contingency will be deemed waived.

35. **Agency Disclosure and Receipt of Agency Pamphlet.** Buyer acknowledges receipt of the pamphlet entitled The Law of Real Estate Agency. The Northwest Multiple Listing Association requires all estate licensees (agents) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents the Seller, the Buyer, both the Seller and the Buyer, or neither. The listing licensee represents the Seller. The selling licensee represents:

[ ] Seller  [X] Buyer  [ ] Neither  [ ] Both.

Selling Licensee Initials Here: ___  Buyer Initials Here: __TL__  Buyer Initials Here: __SL__

36. **Addenda.** The following addenda are attached hereto and made a part of this Agreement:

[ ] NONE   [X] 22S5, 22J, 22K _____

SELLER Michael P Klein, Chapter 7 Bankruptcy Trustee for __Denise Rodriguez__

SELLER SIGNATURE __Michael P. Klein__ DATE __3/26/2013__

BUYER SIGNATURE __Terry Lee Jr Laws__ DATE __3/25/13__

BUYER SIGNATURE __Sarah Jihae Laws__ DATE __3/25/13__

BUYER ADDRESS _____

BUYER PHONE and EMAIL _____

Seller Initial __MPK, Chapter 7 Trustee__   Buyer Initial __TL__   Buyer Initial __SL__

DocuSign Envelope ID: CB288220-8B37-4E6A-94B8-EF0F983BE3E7
Authentisign ID: F5B40318-9AFC-4B93-6342-57891A0C0F05
DocuSign Envelope ID: 766136F3-BB47-42DB-B2C1-8C62A1598B45

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _____ 1

between _____ ("Buyer") 2

and   Michael P. Klein-Chapter 7 Bankruptcy Trustee for Rodriguez 12-19937   ("Seller") 3

concerning   22511 1st Dr. SE, Bothell WA 98021   (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5
Buyer agrees to pay up to 5.5% of purchase price or $20,000 whichever is greater, at closing as a carve-out to 6
the estate. This fee must be paid in full at closing and cannot be included in the loan amount. Fee will appear 7
on HUD as Buyer Bankruptcy Fee. Buyer represents that these funds are available and agrees to provide 8
proof of funds within 10 days of mutual acceptance. 9

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

Initials: BUYER: __TL__ Date: 3/25/13   SELLER: MPK, Ch. 7 Trustee   Date: 1/2/2013
BUYER: __SL__ Date: 3/25/13   SELLER: _____   Date: _____

Case 12-19937-KAO    Doc 33    Filed 05/06/13    Ent. 05/06/13 12:51:19    Pg. 12 of 13

DocuSign Envelope ID: B6563850-E36B-4FA1-AF43-9F0CB9AF4995
Authentisign ID: 75B40318-8AFC-4B93-8512-5783FA6CCF85

| | | |
|---|---|---|
| Form 22SS<br>Short Sale Addendum<br>Rev. 12/12<br>Page 1 of 1 | SHORT SALE ADDENDUM TO<br>PURCHASE & SALE AGREEMENT | ©Copyright 2012<br>Northwest Multiple Listing Service<br>ALL RIGHTS RESERVED |

The following is part of the Purchase and Sale Agreement dated <u>March 25, 2013</u> 1
between <u>Terry Lee Laws Jr and Sarah Jihae Laws</u> ("Buyer") 2
and <u>Trustee for Rodriquez</u> ("Seller") 3
concerning <u>22511 1st Dr SE, Bothell</u> ("the Property"). 4

1. **SHORT SALE.** A "Short Sale" is a transaction that depends on Seller's creditor(s)' agreement to accept less than the amount secured by the Property in order to satisfy Seller's obligations at Closing. Buyer and Seller acknowledge that the purchase price is insufficient to cover Seller's obligations at Closing and that this Agreement constitutes a Short Sale.

2. **SHORT SALE CONTINGENCY.** This Agreement is contingent upon Seller obtaining written consent from Seller's creditor(s) for the Short Sale and Seller's acceptance of any conditions imposed by Seller's creditor(s) ("Lender Consent"). Seller shall have _____ days (60 days, if not filled in) after mutual acceptance to obtain Lender Consent. If Seller timely gives notice of Lender Consent to Buyer ("Notice of Lender Consent"), then this contingency shall be deemed satisfied. If Seller fails to timely give Notice of Lender Consent to Buyer, then this Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. If Seller becomes aware that Seller's creditor(s) did not consent to the Agreement or if Seller decides not to accept the conditions imposed by Seller's creditor(s), Seller shall give notice to Buyer of that fact within 2 days and upon Seller's notice, this Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. Buyer and Seller acknowledge that Seller has limited control over whether Seller's creditor(s) will consent to the sale and when such consent is given.

3. **OFFERS FROM OTHER BUYERS.** Seller may accept offers from other buyers to purchase the Property to submit to Seller's creditor(s). The parties are advised that some creditors may require that Seller submit multiple offers in order to satisfy Seller's obligations to its creditors. Buyer acknowledges that this Agreement does not have any priority over agreements with or offers from other buyers. Seller has limited control over which agreement Seller's creditor(s) may approve, and Seller may continue to market the Property and show it to other potential buyers. At the time of the offer, Buyer is advised to inquire about other offers that Seller may have already accepted.

   If, after mutual acceptance, Seller submits an offer from another buyer to Seller's creditor(s), Seller must give notice to Buyer of that fact within 2 days of each such offer ("Notice of Additional Offer"). Buyer may terminate this Agreement within 3 days of receiving any Notice of Additional Offer, in which case, the Earnest Money, if deposited, shall be refunded to Buyer.

4. **TERMINATION BY BUYER.** Buyer ☐ may; ☒ may not (may, if not filled in) terminate this Agreement at any time prior to Notice of Lender Consent. Buyer maintains the right to terminate the Agreement under any other condition or contingency in the Agreement prior to Notice of Lender Consent. If Buyer terminates this Agreement under this Section, the Earnest Money, if deposited, shall be refunded to Buyer.

5. **COMPUTATION OF TIME.** For the purposes of computing time only (except for paragraph 2 above and the specific items checked below), all timelines in this Agreement shall begin on the date of Notice of Lender Consent. The timelines for the following items, if checked, shall instead begin on mutual acceptance:

   ☒ Deposit of Earnest Money ☒ Inspection Addendum (Form 35)
   ☐ Financing Addendum (Form 22A) ☐ Title Contingency Addendum (Form 22T)
   ☐ Buyer's Sale of Property Contingency Add. (Form 22B) ☐ Septic Addendum (Form 22S)
   ☐ Homeowner's Assoc. Review Period (Form 22D) ☐ Other _____

6. **CLOSING.** The Closing Date shall be _____ days (30 days, if not filled in) after Notice of Lender Consent, which date shall supersede the Closing Date otherwise provided for in this Agreement.

7. **IMPLICATIONS OF A SHORT SALE.** The parties acknowledge that this Addendum does not fully explain all of the implications of a Short Sale. The parties are advised to seek the advice of third party professionals regarding this Agreement and the consequences of this Addendum. Seller acknowledges receipt of the Short Sale Seller Advisory pamphlet prepared by Washington Departments of Licensing and Financial Institutions.

8. **NOTICES.** NWMLS Form 90SS (Notice Pursuant to Short Sale Addendum) shall be used for any notice required by this Addendum.

Initials: BUYER: *TL* Date: 03/25/2013 SELLER: *MPK, Chapter 7 Trustee* Date: 3/30/2013
BUYER: *SL* Date: 03/25/2013 SELLER: _____ Date: _____